Nos. 23-10151 & 23-10171

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

HAVANA DOCKS CORPORATION,

*Plaintiff-Appellee / Cross-Appellant,*

v.

ROYAL CARIBBEAN CRUISES, LTD., NORWEGIAN CRUISE LINE HOLDINGS, LTD., CARNIVAL CORPORATION, A FOREIGN CORPORATION DOING BUSINESS AS CARNIVAL CRUISE LINES, MSC CRUISES S.A. CO., MSC CRUISES (USA), INC., ET AL.,

*Defendants-Appellants / Cross-Appellees.*

On Appeal from the U.S. District Court for the Southern District of Florida, Nos. 19-cv-23588, 19-cv-23590-BB, 19-cv-23591-BB (Hon. Beth Bloom)

## BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS-APPELLANTS/CROSS-APPELLEES AND REVERSAL

Jordan L. Von Bokern
U.S. CHAMBER LITIGATION
1615 H Street, NW
Washington, DC 20062

Evan M. Tager
Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
etager@mayerbrown.com

*Counsel for* Amicus Curiae *Chamber of Commerce of the United States of America*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, counsel for *amicus curiae* the Chamber of Commerce of the United States of America certify that, in addition to those identified in the opening brief filed by Defendants-Appellants/Cross-Appellees, the following is a complete list of trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that may have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.     Evan M. Tager, counsel for *amicus curiae* the Chamber of Commerce of the United States of America;

2.     Carmen N. Longoria-Green, counsel for *amicus curiae* the Chamber of Commerce of the United States of America;

3.     Mayer Brown LLP, counsel for *amicus curiae* the Chamber of Commerce of the United States of America;

4.     Jordan L. Von Bokern, counsel for *amicus curiae* the Chamber of Commerce of the United States of America.

i

5.      The Chamber of Commerce of the United States of America, *amicus curiae*.

The Chamber of Commerce of the United States of America is a non-profit membership organization with no parent company and no publicly traded stock. No publicly held company has 10 percent or greater owner-ship in the Chamber.

This 7th day of July, 2023.

Respectfully submitted,

/s/ *Evan M. Tager*

Evan M. Tager
Carmen N. Longoria-Green
Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 263-3000

Jordan L. Von Bokern
U.S. CHAMBER LITIGATION
1615 H Street, NW
Washington, DC 20062

*Attorneys for* Amicus Curiae *Chamber of Commerce of the United States of America*

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICUS CURIAE* .................................................................. 1

STATEMENT OF THE ISSUE .................................................................. 3

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................. 3

ARGUMENT .................................................................. 7

    THE AGGREGATE DAMAGES OF $439 MILLION FOR THE
    TEMPORARY USE OF A DOCK CONTRAVENE DUE
    PROCESS AND SHOULD BE SET ASIDE AS DUPLICATIVE
    AND EXCESSIVE UNDER FEDERAL COMMON LAW ..................... 7

    A.   The $439 Million Aggregate Statutory Damages Violate
          Due Process ..................................................................... 7

          1.   Statutory Damages Under The Helms–Burton Act
               Are Subject To Due Process Limitations ............................ 7

          2.   $439 Million In Aggregate Damages Is Grossly
               Excessive In Light Of The Act's Twin Goals Of
               Compensation And Deterrence ......................................... 12

               a. The aggregate damages far exceed the amount
                  needed for the statutory purpose of compensation ....... 13

               b. The damages are far greater than necessary to
                  achieve the statutory purpose of deterrence ................ 17

    B.   The Statutory Damages Provision Should Be Construed
          To Avoid Excessive Awards In Light Of Federal Common
          Law ............................................................................... 22

          1.   The One-Satisfaction Rule Prohibits Compensating
               Havana Docks Repeatedly For The Full Value Of The
               Concession ................................................................... 23

          2.   The $439 Million Award Contravenes Common-Law
               Principles Requiring Proportionality Between An
               Injury And Damages ....................................................... 27

CONCLUSION ........................................................................... 31

iii

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
  501 U.S. 104 (1991) ........................................................................2, 23, 25

*\*BMW of N. Am., Inc. v. Gore,*
  517 U.S. 559 (1996) ...........................................................................*passim*

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.,*
  517 F.3d 1271 (11th Cir. 2008) ................................................ 6, 23, 24, 25

*Burban v. City of Neptune Beach, Fla.,*
  920 F.3d 1274 (11th Cir. 2019) ..............................................................31

*Daka, Inc. v. McCrae,*
  839 A.2d 682 (D.C. 2003) ......................................................................21

*Exxon Shipping Co. v. Baker,*
  554 U.S. 471 (2008) .........................................................................10, 11

*Garcia-Bengochea v. Carnival Corp.,*
  57 F.4th 916 (11th Cir. 2023).........................................................2, 3, 12

*George v. Foster,*
  129 F.3d 610 (5th Cir. 1997) ..................................................................16

*Glen v. Club Méditerranée, S.A.,*
  450 F.3d 1251 (11th Cir. 2006) ..............................................................12

*Golan v. FreeEats.com, Inc.,*
  930 F.3d 950 (8th Cir. 2019) ..................................................................22

*In re Graybill,*
  2020 WL 4810298 (M.D. Fla. July 21, 2020) ....................................23, 24

---

\*    Citations upon which *amicus* primarily relies are marked with asterisks.

iv

## TABLE OF CITATIONS
### (continued)

*Havana Docks Corp. v. Carnival Corp.,*
    592 F. Supp. 3d 1088 (S.D. Fla. 2022)..............................*passim*

*Johansen v. Combustion Eng'g, Inc.,*
    170 F.3d 1320 (11th Cir. 1999) ...............................................27

*Kassman v. Am. Univ.,*
    546 F.2d 1029 (D.C. Cir. 1976) ...............................................24

*Kemp v. Am. Tel. & Tel. Co.,*
    393 F.3d 1354 (11th Cir. 2004) ...............................................27

*Lompe v. Sunridge Partners, LLC,*
    818 F.3d 1041 (10th Cir. 2016) ...............................................20

*Lowery v. Fid. Nat'l Prop. & Cas. Ins.,*
    805 F.3d 204 (5th Cir. 2015) ...................................23, 24, 25

*Memphis Cmty. Sch. Dist. v. Stachura,*
    477 U.S. 299 (1986) ...................................................................11

*Montera v. Premier Nutrition Corp.,*
    621 F. Supp. 3d 1012 (N.D. Cal. 2022)..................................10

*Parker v. Time Warner Entm't Co.,*
    331 F.3d 13 (2d Cir. 2003).....................................................8, 9

*\*Payne v. Jones,*
    711 F.3d 85 (2d Cir. 2013).................................................23, 28

*Perez v. Z Frank Oldsmobile, Inc.,*
    223 F.3d 617 (7th Cir. 2000) ...................................................28

*Saccameno v. U.S. Bank Nat'l Ass'n,*
    943 F.3d 1071 (7th Cir. 2019) ...........................................19, 20

*Screen Gems–Columbia Music, Inc. v. Metlis & Lebow Corp.,*
    453 F.2d 552 (2d Cir. 1972).....................................................25

# TABLE OF CITATIONS
## (continued)

*Singer v. Olympia Brewing Co.*,
  878 F.2d 596 (2d Cir. 1989)........................................................25

*Smith v. Wade*,
  461 U.S. 30 (1983) ....................................................................21

*\*St. Louis, I. M. & S. Ry. v. Williams*,
  251 U.S. 63 (1919) ...................................................................8, 9

*\*State Farm Mut. Auto. Ins. v. Campbell*,
  538 U.S. 408 (2003) ............................................................*passim*

*Texas v. Am. Blastfax, Inc.*,
  164 F. Supp. 2d 892 (W.D. Tex. 2001)....................................22

*\*Turley v. ISG Lackawanna, Inc.*,
  774 F.3d 140 (2d Cir. 2014)................................... 21, 27, 28, 30

*United States v. Bajakajian*,
  524 U.S. 321 (1998) ....................................................................8

*United States v. Reul*,
  959 F.2d 1572 (Fed. Cir. 1992) ..........................................15, 16

*Wakefield v. ViSalus, Inc.*,
  51 F.4th 1109 (9th Cir. 2022)..............................................9, 10

*West Virginia v. United States*,
  479 U.S. 305 (1987) ..................................................................15

*Williams v. ConAgra Poultry Co.*,
  378 F.3d 790 (8th Cir. 2004) ....................................................27

*Williams v. First Advantage LNS Screenings Solutions Inc.*,
  947 F.3d 735 (11th Cir. 2020) ............................................20, 27

# TABLE OF CITATIONS
## (continued)

**Statutes and Rules**

Fed. R. App. P. 29(a)(4)(E) ............................................................... 1

Helms–Burton Act ................................................................ *passim*

    22 U.S.C. § 6023(13) ...................................................................... 4

    22 U.S.C. § 6081(11) ...................................................................... 3

    22 U.S.C. § 6082(a)(1)(A) ......................................................... 4, 5

    22 U.S.C. § 6082(a)(1)(A)(ii) ........................................................ 5

    22 U.S.C. § 6082(a)(1)(B) ............................................................. 4

    22 U.S.C. § 6082(a)(2) .............................................................. 4, 17

    22 U.S.C. § 6082(a)(3)(A) ............................................................. 4

    22 U.S.C. § 6083(a)(1) .................................................................. 4

## INTEREST OF *AMICUS CURIAE*

The Chamber of Commerce of the United States of America ("the Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of concern to the nation's business community.[1]

Here, four cruise-line companies each face more than $109 million in damages (a collective $439 million) under the Helms–Burton Act for their transitory use of a dock in Havana, Cuba. Plaintiff Havana Docks Corporation had a 99-year concession from the pre-Castro Cuban government under which Havana Docks was entitled to use the dock until 2004.

---

[1]    Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amicus curiae* affirms that no party or counsel for a party authored this brief in whole or in part and that no person other than *amicus curiae,* its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

1

The concession and the tangible assets on the dock were valued at approximately $8.6 million, and Havana Docks lost it all in 1960 when Fidel Castro nationalized the property. According to the district court, Havana Docks can now recover $109 million from each of the defendants here and may obtain even more from any other entity that used the dock within the relevant statutory period or may use the dock in the future. In short, the Helms–Burton Act, as interpreted by the district court, has created a massive windfall for Havana Docks, allowing it to receive far more than the value of the time-limited property interest that was taken more than sixty years ago.

This result is at odds with fundamental principles of due process, under which statutory damages should be no more than reasonably necessary to achieve the statute's purposes—here, to compensate victims of Castro's regime and to deter trafficking in property seized by that regime. *See Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 920 (11th Cir. 2023). What's more, it ignores the federal-common-law principles that formed the background for the Helms-Burton Act. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). When viewed through

either lens—constitutional due process or federal common law—the damages awarded by the district court are manifestly unsustainable.

The Chamber's members have a strong interest in ensuring that the Helms–Burton Act is interpreted and applied fairly and that courts recognize and apply the limitations on statutory damages mandated by both the Constitution's Due Process Clause and federal common law.

## STATEMENT OF THE ISSUE

*Amicus* will address whether the four awards totaling $439 million in damages for the temporary use of a dock, which was once encumbered with a time-limited concession worth $8.6 million, should be set aside under the Due Process Clause and/or federal common law.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

As applied in this case, the system for awarding damages under the Helms–Burton Act is a witches' brew of unconstitutionality that contravenes long-held common-law principles.

Congress passed the Helms–Burton Act in 1996 to "deter trafficking" in property seized by Cuba's Castro regime. *Garcia-Bengochea*, 57 F.4th at 920 (cleaned up). Title III of the Act creates a private cause of action empowering U.S. nationals "who were the victims of th[o]se confiscations," 22 U.S.C. § 6081(11), to seek damages against "any person

3

that ... traffics in [that confiscated] property" from 1996 onward, 22 U.S.C. § 6082(a)(1)(A). An entity may "traffic" in confiscated property simply by "engag[ing] in a commercial activity using" the property. 22 U.S.C. § 6023(13). Congress provided that plaintiffs seeking recovery for confiscated property could establish their right to that recovery by submitting a claim to the Foreign Claims Settlement Commission ("FCSC"); if the FCSC certified the claim, the certified amount of the claim would become the presumptive value of the property. *See* 22 U.S.C. §§ 6082(a)(2), 6083(a)(1).

The Act does more than compensate victims for the loss of their property, particularly as interpreted by the district court. The Act provides that a plaintiff may obtain pre-filing interest dating from when the property or property interest was confiscated—here, 1960—until the date the complaint was filed. *See* 22 U.S.C. § 6082(a)(1)(B). The Act also provides for treble damages. *See* 22 U.S.C. § 6082(a)(3)(A). Combined with the interest provision, this means that plaintiffs receive many times what they lost due to the confiscation—here, the total damages are almost seven times the inflation-adjusted value of Havana Dock's time-limited

4

property interest in the dock.[2] Nor are these statutory damages tied to the severity of a defendant's conduct. The Act provides that a plaintiff may seek the entire value of the confiscated property from a defendant no matter how little or how much the defendant may have used that property. *See* 22 U.S.C. § 6082(a)(1)(A). So here, a defendant that used the dock 83 times faced the same amount in damages as a defendant that used the dock 193 times. *Havana Docks Corp.*, 592 F. Supp. 3d at 1128-29. If another entity had used the dock only once, the same damages amount would apply. And finally, the Act provides that a successful plaintiff will receive attorneys' fees and costs. *See* 22 U.S.C. § 6082(a)(1)(A)(ii). The defendants here are on the hook for another $2.2 million to $3.6 million under that provision. *See* NCL.Dkt. 452, at 3.[3]

But the district court went beyond what the statute requires. The court ruled that both the interest payment (here, more than $27 million) ***and*** the full amount of the certified claim (approximately $9.1 million)

---

[2]    The FCSC certified the value of Havana Dock's concession and the accompanying tangible assets at approximately $8.6 million in 1971. *Havana Docks Corp. v. Carnival Corp.*, 592 F. Supp. 3d 1088, 1122 (S.D. Fla. 2022). That amount was the equivalent of approximately $64.2 million in December 2022, when the district court entered its order on damages. *See* CPI Inflation Calculator, U.S. Bureau of Labor Statistics, https://bit.ly/44g1bjF.

[3]    This brief follows the citation format adopted by Appellants/Cross-Appellees. *See* Appellants/Cross-Appellees' Opening Br. 5 n.2.

should be trebled, instead of trebling the value of the concession alone and adding interest only once. *See* NCL.Dkt. 428 at 11-13. To make matters worse, the district court decided that the One-Satisfaction Rule, which "generally provides that a plaintiff is entitled to only one satisfaction for a single injury," *BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 517 F.3d 1271, 1276 (11th Cir. 2008), does not apply to Helms–Burton Act claims, because awards under the Act are meant to "deter" third parties from benefitting from the Castro regime's conduct. *See* NCL.Dkt. 429, at 5. The upshot is that Havana Docks can continue to receive three times the sum of the full amount of the certified claim and pre-filing interest from any entity that uses the dock (however little or much), with no end in sight. And the district court decided as much notwithstanding that the claim certified by the FCSC covered more property than the concession alone. *See* NCL.Dkt. 452, at 4-7; 592 F. Supp. 3d at 1122 (certified claim valued the concession and accompanying tangible assets at approximately $8.6 million, while the full amount of the certified claim for all property was $9.1 million).

The resulting aggregate damages are far afield from the value of the concession that was taken from Havana Docks in 1960. This windfall for Havana Docks is so grossly excessive that it calls out for this Court's intervention under either the Due Process Clause or federal common law.

6

Both sources of law prohibit awards that are untethered to either the reprehensibility of the defendant's conduct or the actual injury experienced by the plaintiff. The Court should vacate the four damages awards and remand with instructions to adjust them so that they are no more than necessary to accomplish the Helms–Burton Act's goals of compensation and deterrence.

## ARGUMENT

**The Aggregate Damages Of $439 Million For The Temporary Use Of A Dock Contravene Due Process And Should Be Set Aside As Duplicative And Excessive Under Federal Common Law**

### A.    The $439 Million Aggregate Statutory Damages Violate Due Process

#### 1.    Statutory Damages Under The Helms–Burton Act Are Subject To Due Process Limitations

The Supreme Court and the courts of appeals have consistently held that no matter how a penalty or damages award is characterized, it must satisfy the due process requirement that it be proportional to the seriousness of the defendant's conduct and the government's need to punish or deter that conduct. This is true whether the defendant faces a criminal fine, civil penalty, criminal or civil forfeiture, punitive damages award, or—as here—a statutory damages award. *See, e.g.*, *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408, 416 (2003) (explaining, in the

context of punitive damages, that "[t]he Due Process Clause of the Four-teenth Amendment prohibits the imposition of grossly excessive or arbi-trary punishments on a tortfeasor"); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (explaining, in the context of criminal forfeiture, that the "touchstone of the constitutional inquiry" is "the principle of propor-tionality," namely, that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense"); *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 n.24 (1996) ("The principle that punishment should fit the crime is deeply rooted and frequently repeated in common-law juris-prudence.") (cleaned up).

A statutory award thus violates due process if it is grossly dispro-portionate to the legitimate interests that the statute seeks to achieve. As the Supreme Court explained a century ago, statutory damages vio-late due process if they are "so severe and oppressive as to be wholly dis-proportioned to the offense and obviously unreasonable" in light of the statute's goals. *St. Louis, I. M. & S. Ry. v. Williams*, 251 U.S. 63, 67 (1919). Courts have since applied this rationale to awards issued under multiple federal statutes. *See, e.g.*, *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 22 (2d Cir. 2003) (acknowledging that the statutory damages

provision in the Cable Communications Policy Act may violate due process when it results in a "devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class"); *Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022) (in the context of statutory damages under the Telephone Consumer Protection Act (TCPA), acknowledging that "[t]he due process clauses of the Constitution … set outer limits on the magnitude of damages awards").

In determining whether a statutory award is disproportionate within the meaning of *Williams*, the cases elucidating the due process limits on punitive damages are highly relevant, with one caveat: These cases reflect the fact that punitive damages serve an additional goal not present here—punishment. The guidelines described in the punitive damages cases therefore allow for even larger awards than would be appropriate pursuant to a statute, like the Helms–Burton Act, that Congress meant to have a compensatory and deterrent, but not punitive, effect. *See Parker*, 331 F.3d at 22 (acknowledging that, when statutory awards become too high, they "come to resemble punitive damages"); *Wakefield*, 51 F.4th at 1122 (when statutory damages become too high,

they may become "unduly punitive"); *id*. ("Compensation and deterrence aims can be overshadowed when damages are aggregated, leading to damages awards that are largely punitive and untethered to the statute's purpose"); *cf. Montera v. Premier Nutrition Corp.*, 621 F. Supp. 3d 1012, 1019-20 (N.D. Cal. 2022) ("the analysis used for assessing the constitutionality of an award of punitive damages is a helpful point of comparison" when assessing statutory damages under a regime that the legislature intended to be punitive).

With that caveat in mind, the following guidelines from the punitive damages cases should inform the proportionality analysis for statutory awards issued under the Helms–Burton Act.

First, the Supreme Court, and many lower courts, cite the ratio between punitive and compensatory damages as a key metric in determining the constitutionally permissible amount of a punitive award. *See BMW*, 517 U.S. at 580 (noting that the "most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff"). The Supreme Court has concluded that historical data on punitive damages awards confirm that "a high ratio of punitive to compensatory damages is substantially greater than

10

necessary to punish or deter." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 499 (2008). "[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," and a punitive damages "award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425.

Further, "[w]hen compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *State Farm*, 538 U.S. at 425. This is because the significant compensatory damages are already a deterrent and little in the way of additional damages may be needed to appropriately deter the defendant's conduct. *See, e.g.*, *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986) ("[d]eterrence ... operates through the mechanism of damages that are *compensatory*").

Second, non-compensatory damages should not ignore the nature of a defendant's conduct. The Supreme Court has emphasized that "[p]erhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *See BMW*, 517 U.S. at 575. The more reprehensible the conduct,

11

the higher the award may be, which "reflects the accepted view that some wrongs are more blameworthy than others" and that the need to deter egregious conduct is more significant. *Id*. Multiple factors are relevant to the reprehensibility analysis, including whether "the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." *State Farm*, 538 U.S. at 419. The existence of only one factor "may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id*.

### 2.    $439 Million In Aggregate Damages Is Grossly Excessive In Light Of The Act's Twin Goals Of Compensation And Deterrence

The Helms–Burton Act serves two purposes: to compensate U.S. persons whose property was seized by the Castro regime and deter trafficking in confiscated property. *See Garcia-Bengochea*, 57 F.4th at 920; *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006). The due process inquiry, therefore, asks whether the damages

awarded are excessive in light of the dual purposes of compensation and deterrence. *See BMW*, 517 U.S. at 568 ("the federal excessiveness inquiry appropriately begins with an identification of the state interests that a punitive award is designed to serve").

As applied in this case, the statutory damages scheme established by the Helms–Burton Act violates due process. The damages amounts it yields, particularly as interpreted by the district court, are arbitrary and go far beyond accomplishing Congress's goals of compensation and deterrence.

> **a.   The aggregate damages far exceed the amount needed for the statutory purpose of compensation**

The $439 million in total damages operates as an enormous windfall for Havana Docks. There are five primary reasons why:

*First*, the district court held that the common-law One-Satisfaction Rule—which prohibits double (or in this case quadruple) recovery—does not inform the interpretation of the Helms–Burton Act. *See* NCL.Dkt. 429. This means that, if the district court's ruling is not overturned, Havana Docks will receive the full value of the certified claim, plus statutory

interest, four times over—once from each of the four cruise-line defendants. Havana Docks also will be free to seek repeatedly the full amount of the certified claim from any other entity that has previously used the dock (within the two-year time bar) or may use the dock in the future. Havana Docks thus could sue 400 or 4,000 defendants—if the dock is used by that many entities—and continue to receive the full value of the certified claim, plus statutory interest, again and again. This repeated bounty is patently unnecessary to serve the compensatory purpose of the Act.

*Second*, Havana Docks' property interest in the dock expired in 2004 under the original terms of the concession, yet the company has been awarded compensation for the defendants' use of the dock from 2015 through 2019. To the extent that the Helms–Burton Act seeks to restore plaintiffs to the economic standing they would have had if Castro had not nationalized their property, imposing damages in this case does not serve that interest. The relevant property interest would have expired by the time the defendants used the dock. In other words, Havana Docks was not actually injured (and therefore can't be said to require compensation) for anything the four defendants did.

14

*Third*, the district court calculated the damages award based on the value of the full certified claim. But the certified claim (valued at $9.1 million) covers additional property besides the dock concession and the dock's accompanying tangible assets (valued at $8.6 million), so the full damages award is perforce greater than necessary to compensate Havana Docks for its property interest in the dock, the only property that was allegedly "trafficked" by the defendants. *See Havana Docks Corp.*, 592 F. Supp. 3d at 1122.[4]

*Fourth*, the district court decided to treble **both** the pre-filing interest and the value of the dock concession, instead of the value of the dock concession alone. *See* NCL.Dkt. 428, at 11-13. But the "purpose of prejudgment interest" is "to make [the] party whole, not [to] penalize." *United States v. Reul*, 959 F.2d 1572, 1578 (Fed. Cir. 1992); *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving

---

[4]      The FCSC certified claim includes four categories: "(1) Concession and tangible assets ($8,684,360.18); (2) Securities ($184,005.70); (3) Accounts Receivable ($301,055.00); and (4) Debt of Cuban Government ($10,280.00)." *Havana Docks Corp.*, 592 F. Supp. 3d at 1122 (cleaned up).

full compensation for the injury those damages are intended to redress."). By trebling it, the district court ensured that the interest payment no longer reflected compensation for the lost concession—by, for instance, accounting for changes due to inflation or for the profit that Havana Docks might have earned if the dock had not been nationalized. Instead, the trebled interest became a punitive component of the award—the equivalent of allowing interest on punitive damages, which is forbidden in virtually every American jurisdiction precisely because interest is supposed to be compensatory. *See Reul*, 959 F.2d at 1578 ("Prejudgment interest may not be awarded on punitive damages."); *George v. Foster*, 129 F.3d 610, 610 (5th Cir. 1997) (explaining that "[m]ost other courts that have addressed the issue agree that prejudgment interest is basically compensatory and generally should not be granted on punitive damages" and citing cases). And the district court's decision to treble the interest was no small matter—the interest payment for each defendant was approximately $27 million before trebling, meaning that approximately $54 million of the $109 million assessed against each defendant had no connection to a compensatory purpose whatever.

*Fifth*, under the Helms–Burton Act and as relevant here, courts assess damages based on the value of the entire property, as stated in the certified claim. *See* 22 U.S.C. § 6082(a)(2). But defendants did no more than temporarily use the dock. The dock was not moved or harmed in any way, so compensating Havana Docks for the entire amount of the certified claim is disproportionate and untethered to the actual injury.

> **b.    The damages are far greater than necessary to achieve the statutory purpose of deterrence**

Under Supreme Court case law, an award that is meant to punish misconduct and to deter similar conduct in the future violates due process if it is disproportionate to the degree of reprehensibility of the defendant's behavior. *See State Farm*, 538 U.S. at 419. The four $109 million awards here fail this requirement because they are entirely untethered to the gravity of any defendant's conduct. Instead, the award remains the same whether the defendant used the dock once or 10,000 times.

Even more troubling, the Helms–Burton Act does not require that a defendant's conduct evince any of the indicia of reprehensibility identified by the Supreme Court. Those indicia include whether the defendant's

17

conduct physically harmed someone, whether the defendant displayed in-difference or reckless disregard for others' safety, whether the defendant targeted the financially vulnerable, whether the defendant engaged in a pattern of misconduct, and whether the defendant's conduct was inten-tional, fraudulent, or malicious. *See State Farm*, 538 U.S. at 419. But a defendant could easily traffic in confiscated property within the meaning of the Act—that is, use the property in a commercial endeavor—and never satisfy any of these factors. As construed by the district court, the Act could nevertheless result in the imposition of a damages award that "is tantamount to a severe criminal penalty," *BMW*, 517 U.S. at 585.

This case well illustrates that problem. The defendants temporarily used a dock more than a decade after the expiration of Havana Docks' concession—a date that was a matter of public record thanks to the FCSC-certified claim. *See Havana Docks Corp.*, 592 F. Supp. 3d at 1168. The defendants could have rationally believed that their use of the dock in no way harmed Havana Docks' interests or affected its certified claim for a loss that had happened nearly sixty years earlier.

As for the *State Farm* factors, only one is possibly met—"the con-duct involved repeated actions" because each defendant used the dock

more than once. 538 U.S. at 419.[5] But the Supreme Court and lower courts have explained that this factor involves "recidivism"—i.e., engaging in repeated misconduct after knowing that it is impermissible or tortious. *See, e.g.*, *BMW*, 517 U.S. at 576-77 ("[E]vidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law."); *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1087 (7th Cir. 2019) (factor was satisfied because defendant "continued its ways despite repeated warnings from regulators"). In any event, the Supreme Court has explained that a single reprehensibility factor "may not be sufficient to sustain a punitive damages award." *State Farm*, 538 U.S. at 419. The same is true of non-punitive damages meant to deter future conduct.

The fact that the total damages of $439 million are nearly seven times the inflation-adjusted value of the concession should also give the Court serious pause. The Supreme Court has cautioned that a 1:1 ratio

---

[5]    And as mentioned before, the Helms–Burton Act would impose the same statutory damages award even if a defendant had used the dock only one time and therefore never satisfied this or any other *State Farm* factor.

may mark the constitutional line when the compensatory component of the damages is "substantial," as it is here. *See State Farm*, 538 U.S. at 425. This is because a large compensatory damages award also provides deterrence, so little in terms of additional damages is needed to fully deter the unwanted conduct. *See, e.g., Williams v. First Advantage LNS Screenings Solutions Inc.*, 947 F.3d 735, 763-67 (11th Cir. 2020) (reducing punitive damages award from 13:1 ratio to 4:1 ratio where compensatory damages were $250,000 and suggesting that a 1:1 ratio might have been the constitutional maximum had the compensatory damages been larger); *Saccameno*, 943 F.3d at 1086-87 (reducing punitive damages to 1:1 ratio where compensatory damages were $582,000); *Lompe v. Sunridge Partners, LLC*, 818 F.3d 1041, 1073 (10th Cir. 2016) ("since the Supreme Court's decision in *State Farm*, many federal appellate courts have imposed a 1:1 ratio where, as here, the compensatory damages exceed $1 million").

Moreover, here the compensatory component of the award is already large in relation to the actual injury—the district court awarded the full amount of the certified claim instead of the value of the concession alone or an even lesser amount that reflected the fleeting nature of

20

the defendants' purported "trafficking." The large compensatory damages therefore play a significant role in deterrence, making an additional penalty even less necessary. *See Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 165-66 (2d Cir. 2014) (refusing to "stack" extensive punitive damages on top of compensatory damages because the two categories of damages served similar deterrence purposes and ordering remittitur of punitive damages to twice the compensatory damages).

And finally, the cruise-line defendants also have to pay for Havana Docks' attorneys' fees and costs in amounts ranging from approximately $2.2 million to $3.6 million. *See* NCL.Dkt. 452, at 3. That too provides deterrence, again suggesting that the rest of the award—the trebled compensatory award and trebled interest—should be reduced as disproportionate to the Act's goal of deterring trafficking in nationalized property. *See Smith v. Wade*, 461 U.S. 30, 94 (1983) (O'Connor, J., dissenting) ("awards of compensatory damages and attorney's fees already provide significant deterrence"); *Daka, Inc. v. McCrae*, 839 A.2d 682, 701 n.24 (D.C. 2003) (explaining that trial judges "should consider" "substantial" awards of attorneys' fees when "applying due process analysis under *State Farm*").

21

\*       \*       \*

In sum, the aggregate awards of $439 million are far greater than necessary to satisfy the twin goals of the Helms–Burton Act—compensation and deterrence—and therefore violate due process. Courts addressing other federal statutory schemes have significantly reduced "shockingly large" awards of statutory damages. *See, e.g.*, *Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 955, 962-63 (8th Cir. 2019) (reducing a $1.6 billion statutory damages award under the TCPA to $32 million); *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 900-01 (W.D. Tex. 2001) (finding it "inequitable and unreasonable" to award $2.34 billion for TCPA violations and instead awarding 7 cents per violation). The district court erred when it failed to do likewise.

### B.   The Statutory Damages Provision Should Be Construed To Avoid Excessive Awards In Light Of Federal Common Law

Federal common law serves to "fill the interstices of a pervasively federal framework," such as the Helms–Burton Act, which created a federal cause of action for harms that raise uniquely federal interests—the acts of another sovereign. Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4516 (3d ed.). "Congress is understood to leg-

islate against a background of common-law adjudicatory principles." *Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108. "Thus, where a common-law principle is well established … the courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Id.* (cleaned up).

Two principles from federal common law should have informed and cabined the district court's interpretation of the Helms–Burton Act here. The first is the One-Satisfaction Rule or the "bar on double recovery." *Lowery v. Fid. Nat'l Prop. & Cas. Ins.*, 805 F.3d 204, 208 (5th Cir. 2015). The second is the common law's bar on disproportionate or excessive awards. *See Payne v. Jones*, 711 F.3d 85, 100-06 (2d Cir. 2013). Had the court applied either of these principles, it would have awarded damages that more accurately reflect the scope of Havana Docks' injury and the nature of the defendants' conduct.

### 1. The One-Satisfaction Rule Prohibits Compensating Havana Docks Repeatedly For The Full Value Of The Concession

The One-Satisfaction Rule is a well-established "common-law limitation" that "operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury." *BUC Int'l Corp.*, 517 F.3d at 1277; *see also In re Graybill*, 2020 WL 4810298, at *5 (M.D. Fla. July 21, 2020)

(One-Satisfaction Rule is "grounded on the principle that it would be unfair for a plaintiff to gain a windfall by *recovering twice* from the same injury; it … ensures that a plaintiff does not secure more than necessary to compensate him for his loss"). The Rule typically arises when multiple defendants allegedly caused the plaintiff's injury but only some of the defendants agreed to settle the claims against them. *See, e.g.*, *Kassman v. Am. Univ.*, 546 F.2d 1029, 1033 (D.C. Cir. 1976). When that occurs, a plaintiff may conceivably recover from both the settling defendants and any defendant that proceeds to trial. But to enforce the "cardinal principle of law … that in the absence of punitive damages a plaintiff can recover no more than the loss actually suffered," *id*. (cleaned up), the Rule requires that the plaintiff's recovery at trial be reduced by the amount received in the partial settlement.

This Court has held that "ample authority supports applying the" One-Satisfaction Rule "to federal causes of action." *BUC Int'l*, 517 F.3d at 1278 n.7. In a case addressing claims brought under the Copyright Act, the Court said that "[t]o hold otherwise"—that is, to not apply the Rule— "would allow a plaintiff to recover multiple times for a single injury, frustrating" the "elementary principle of tort law" that "a plaintiff is entitled to only one recovery for a wrong" "in a manner that we cannot imagine envisioned by Congress." *Id*. at 1278 (cleaned up); *see also Lowery*, 805

24

F.3d at 207-08 (adopting One-Satisfaction Rule for claims brought under the National Flood Insurance Act); *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989) (adopting One-Satisfaction Rule for securities fraud actions brought under federal law); *Screen Gems–Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 553-54 (2d Cir. 1972) (applying One-Satisfaction Rule to claims under the Copyright Act).

The One-Satisfaction Rule should equally apply to claims brought under the Helms–Burton Act. Like the Copyright Act, there is nothing in the Helms–Burton Act that would suggest that Congress intended to depart from the long-held rule that plaintiffs should be compensated for their injury once. The district court's contrary ruling, which allows plaintiffs to recover the full value of their nationalized property an infinite number of times, defies not only common sense, but the common-law principles that Congress is deemed to have taken into account when drafting the statute. *See Astoria Fed. Sav. & Loan Ass'n*, 501 U.S. at 108. If Congress had meant to depart from this well-known, common-law rule, it would have said so plainly.

The district court disagreed for two reasons, neither of which justifies allowing Havana Docks to recover the same damages four (or more) times over.

First, the district court determined that Havana Docks did not suffer a single injury (the nationalization of its property), but a new injury every time someone used the dock. *See* NCL.Dkt. 429, at 5. Therefore, the district court said, the One-Satisfaction Rule does not apply because Havana Docks was not receiving repeated compensation for the same injury—despite the fact that the Helms–Burton Act "quantifies both types of injuries [the nationalization of the property and the later use of the property] by the amount of the certified claim." NCL.Dkt. 429, at 5.

If that were true, then it would simply establish how disproportionate the damages are. For the temporary use of a dock—conduct that is best analogized to a trespass—each cruise line will have to pay three times the sum of the ***entire amount*** of the certified claim plus interest, as well as attorneys' fees and costs. If the Helms–Burton Act is meant only to compensate plaintiffs for the specific harm caused by a specific act of "trafficking" in their property—and not to compensate them for the original taking of that property—then a statutory scheme that ties damages to the full amount of Havana Docks' certified claim (which itself reflects more than the value of the concession to use the dock) is plainly disproportionate to the interests that the Act seeks to achieve and violates due process. *See supra* Sec. A.

26

Second, the district court decided not to apply the One-Satisfaction Rule because the Helms–Burton Act is meant to deter third parties from trafficking in nationalized property, and repeatedly imposing a large damages award tied to the full value of the property was necessary, in the court's view, to achieve that interest. *See* NCL.Dkt. 429, at 5-6. But a staggering $109 million award against each defendant was not needed to deter that conduct. As courts have recognized, deterrence is achieved through much smaller sums. *See, e.g.*, *Williams*, 947 F.3d at 766 (concluding that $1 million was sufficient deterrence in case involving inaccurate criminal background reports); *Kemp v. Am. Tel. & Tel. Co.*, 393 F.3d 1354, 1365 (11th Cir. 2004) (concluding that $250,000 was sufficient deterrence in RICO case involving illegal gambling); *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 799 (8th Cir. 2004) (concluding that $600,000 was sufficient deterrence in race-discrimination case); *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1339 (11th Cir. 1999) (concluding that $4.35 million was sufficient deterrence in case in which mining pollution resulted in acidic water poisoning nearby streams).

### 2. The $439 Million Award Contravenes Common-Law Principles Requiring Proportionality Between An Injury And Damages

Federal common law requires that damages awards be "fair, reasonable, predictable, and proportionate." *Turley*, 774 F.3d at 164 (cleaned

up); *see also Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617, 625 (7th Cir. 2000) (analyzing punitive damages award under federal common law and explaining that "[f]ederal judges may, and should, insist that the award be sensible and justified by a sound theory of deterrence"). Any interpretation of the statutory damages provision in the Helms–Burton Act should reflect this principle.

Federal common law requires a "tighter relationship between the harm suffered and the punishment imposed," *Turley*, 774 F.3d at 166, than does the Due Process Clause, *see also Payne*, 711 F.3d at 101 n.13 ("a greater degree of excessiveness is required to violate the Constitution than to justify remittitur under the supervisory power of the federal appellate courts over federal trial courts"). When evaluating whether an award is excessive in light of federal common-law principles, courts have a "commitment to reducing arbitrariness in damages awards, reining in excessiveness, and ensuring some degree of proportionality" between injury and damages. *Turley*, 774 F.3d at 166.

The district court's interpretation of the Helms–Burton Act ignores these principles. For example, the district court decided to treble the statutory interest, instead of only trebling the value of the property that was allegedly trafficked. *See* NCL.Dkt. 428, at 11-13. The district court decided to base the award on the full amount of the certified claim, instead

of the certified value of the concession. *See* NCL.Dkt. 452, at 7. And the district court decided to reject the One-Satisfaction Rule, providing Havana Docks with repeated recovery for the same injury. *See* NCL.Dkt. 429, at 7-8. At each decision-making point, the district court interpreted the Act in ways that would maximize the damages award, instead of interpreting the Act in light of the well-established and commonsense requirement that the amount of damages imposed should reflect the injury the plaintiff actually experienced.

The resulting $439 million in aggregate damages is wholly disproportionate to the scope of Havana Docks' injury and far greater than necessary to achieve the Act's goal of deterring future use of Havana Docks' property interest. As explained above, *supra* Section A.2., the aggregate damages are 6.8 times the certified value of the concession when adjusted for inflation and 12 times the certified value of the concession plus interest. When the plaintiff's injury is recast as the defendants' temporary use of the dock, rather than the seizure of the concession through nationalization, the aggregate damages are even more excessive, because no rational factfinder would find that a temporary trespass to property that has neither been moved nor harmed requires compensation for the full value of that property (particularly when, as here, the plaintiff's property interest had expired by the time the alleged trespass occurred). And of

course, Havana Docks is receiving far more than the value of the concession—it is receiving the value of the full certified claim (not just the certified value of the concession) plus pre-judgment interest dating from 1960, multiplied by twelve, as well as attorneys' fees and costs.

The four $109 million awards also do not reflect the reprehensibility of the defendants' conduct. The defendant cruise-line companies temporarily used a dock more than a decade after the date on which Havana Docks' concession expired—a date that was public knowledge. *See Havana Docks*, 592 F. Supp. 3d. at 1122. And each of the defendants faces a damages award that is untethered to the number of times that they actually used the dock.

In sum, by ignoring the federal-common-law principle that damages awards should reflect a "tight[] relationship between the harm suffered and the punishment imposed," *Turley*, 774 F.3d at 166, the district court adopted a construction of the Helms–Burton Act that is untethered both to the reality of Havana Docks' experience and the defendant cruise lines' actions. If Congress had meant for courts to ignore the federal com-

mon law's prescription of proportionality, it would have made that intention plain.[6] As it did not, the district court's construction of the Act should be reversed.

## CONCLUSION

The Court should reverse the judgment below.

Respectfully submitted,

Dated:  July 7, 2023

/s/ *Evan M. Tager*
Evan M. Tager
Carmen N. Longoria-Green
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
etager@mayerbrown.com

Jordan L. Von Bokern
U.S. CHAMBER LITIGATION
1615 H Street, NW
Washington, DC 20062

---

[6]    Of course, if Congress had intended for courts to award disproportionate awards under the Helms–Burton Act, that would raise serious due process questions. *See supra* Section A. When faced with two competing statutory interpretations, however, this Court "avoid[s] statutory interpretations that raise constitutional problems." *Burban v. City of Neptune Beach, Fla.*, 920 F.3d 1274, 1282 (11th Cir. 2019).

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), undersigned counsel certifies that this brief:

(i)    complies with the type-volume limitation of Rule 29(a)(5) because it contains 6,394 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6).

Dated:  July 7, 2023                    /s/ *Evan M. Tager*
                                         Evan M. Tager

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I filed the foregoing document with the Clerk of the Court using the appellate CM/ECF system, which will transmit a copy of the document to all counsel of record.

/s/ *Evan M. Tager*
Evan M. Tager