Nos. 23-10151 & 23-10171

# In the United States Court of Appeals For the Eleventh Circuit

HAVANA DOCKS CORPORATION,

*Plaintiff-Appellee/Cross-Appellant,*

v.

ROYAL CARIBBEAN CRUISES, LTD.;
NORWEGIAN CRUISE LINE HOLDINGS, LTD.;
CARNIVAL CORPORATION, a foreign corporation doing business as
Carnival Cruise Lines; MSC CRUISES S.A. CO.;
MSC CRUISES (USA) INC.; et al.,

*Appellants/Cross-Appellees.*

On Appeal from a Final Judgment of the
United States District Court for the Southern District of Florida
Case No. 1:19-cv-23591-BB, Hon. Beth Bloom

**BRIEF OF *AMICI CURIAE* U.S. TRAVEL ASSOCIATION, UNITED STATES TOUR OPERATORS ASSOCIATION, INC., AND AMERICAN SOCIETY OF TRAVEL ADVISORS, INC., IN SUPPORT OF APPELLANTS/CROSS-APPELLEES**

BRADLEY J. BONDI
VITALIY KATS
PAUL HASTINGS, LLP
2050 M Street NW
Washington, DC 20036
bradbondi@paulhastings.com
vitaliykats@paulhastings.com

*Havana Docks Corporation v. Royal Caribbean Cruises Ltd, et al.*
Case Nos. 23-10151 & 23-10171

## <u>CERTIFICATE OF INTERESTED PERSONS AND</u>
## <u>CORPORATE DISCLOSURE STATEMENT</u>

*Amici Curiae*, by their undersigned counsel, and pursuant to Fed. R. App. P.

26.1(a) and 11th Cir. Local R. 26.1-1 through 26.1-3, hereby submit this Certificate

of Interested Persons and Corporate Disclosure Statement as follows:

1.  American Society of Travel Advisors, Inc. – *Amicus* supporting Appellants

2.  Akerman LLP – counsel for Appellant Carnival Corporation

3.  Baldridge, James D. – counsel for Appellants MSC Cruises

4.  Black, Hillary S. – counsel for Appellant Carnival Corporation

5.  Bloom, Honorable Beth – United States District Court Judge for the Southern
    District of Florida

6.  Bohrer, Sanford L. – counsel for Appellant Royal Caribbean Cruises, Ltd.

7.  Boies Schiller Flexner LLP – counsel for Appellant Carnival Corporation

8.  Bondi, Bradley J – counsel for undersigned *Amici*

9.  Burck, William A. – counsel for Appellant Norwegian Cruise Line Holdings,
    Ltd.

10. Carnival Corporation – Appellant

11. Casey, Stephanie A. – counsel for Appellee

12. Clement & Murphy PLLC – counsel for Appellant Royal Caribbean Cruises,
    Ltd.

13. Clement, Paul D.– counsel for Appellant Royal Caribbean Cruises, Ltd.

14. Colson Hicks Eidson – counsel for Appellee

15. Cooper, Jonathan G. – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

16. Cruise Lines International Association – *Amicus* supporting Appellants

17. Dvoretzky, Shay – counsel for Cruise Lines International Association

18. Elayan-Martinez, Aziza F. – counsel for Appellee

19. Ellis George Cipollone O'Brien Annaguey, LLP – counsel for Appellee

20. Fowler, George J., III – counsel for Appellant Carnival Corporation

21. Freyre, Pedro A. – counsel for Appellant Carnival Corporation

22. Gayles, Honorable Darrin P. – United States District Court Judge for the Southern District of Florida

23. Gray, Corey P. – counsel for Appellant Carnival Corporation

24. Harper, Chadwick J. – counsel for Appellant Royal Caribbean Cruises,

25. Havana Docks Corporation – Appellee

26. Hernacki, Andrew T. – counsel for Appellants MSC Cruises

27. Hogan Lovells LLP – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

28. Holland & Knight LLP – counsel for Appellants Royal Caribbean Cruises, Ltd. and Carnival Corporation

29. Jones Walker, LLP – counsel for Appellant Carnival Corporation

30. Kats, Vitaliy – counsel for undersigned *Amici*

31. Klingler, Richard – counsel for Appellee

32. Kroeger, Thomas A. – counsel for Appellee

33. Landau, Christopher – counsel for Appellee

34. Llamas, Luis Emilio – counsel for Appellant Carnival Corporation

35. Li, Vincent – counsel for Appellee

36. Lindsay, Alvin F. (III) – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

37. Lipshultz, Zachary A. – counsel for Appellee

38. Lipshutz, Brian M. – counsel for Appellant Carnival Corporation

39. Loeb, Robert M. – counsel for Appellants MSC Cruises

40. Longoria-Green, Carmen – counsel for U.S. Chamber of Commerce

41. Lorenzo, Richard C. – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

42. Louis, Honorable Lauren F. – United States Magistrate Judge for the Southern District of Florida

43. Maderal, Francisco – Defendant

44. Manhas, Robbie – counsel for Appellants MSC Cruises

45. Margol & Margol – counsel for Appellee

46. Margol, Rodney S. – counsel for Appellee

47. Martinez, Honorable Jose E. – United States District Court Judge for the Southern District of Florida

48. Martinez, Roberto – counsel for Appellee

49. McAliley, Honorable Chris M. – United States Magistrate Judge for the Southern District of Florida

50. Michel, Christopher G. – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

51. MSC Cruises S.A. – Appellant

52. MSC Cruises S.A. Co. – Appellant

53. MSC Cruises (USA) Inc. (real party in interest: MSC Cruises (USA) LLC) – Appellant

54. Munyan, Katherine – Counsel for Appellants MSC Cruises

55. Nemeroff, Justin B. – Counsel for Appellants MSC Cruises

56. Norwegian Cruise Line Holdings, Ltd. ("NCL") – Appellant

57. Oliu, Pascual – counsel for Appellant Carnival Corporation

58. Orrick, Herrington & Sutcliffe LLP – counsel for Appellants MSC Cruises

59. Pegg, Allen P. – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

60. Ponce, Scott D. – counsel for Appellants Royal Caribbean Cruises, Ltd. and Carnival Corporation

61. Quinn Emanuel Urquhart & Sullivan, LLP – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

62. Rosenkranz, E. Joshua – counsel for Appellants MSC Cruises

63. Rowen, Matthew D. – counsel for Appellant Royal Caribbean Cruises, Ltd.

64. Royal Caribbean Cruises, Ltd. (RCL) – Appellant

65. Saladrigas, Caitlin F. – counsel for Appellant Royal Caribbean Cruises, Ltd.

66. Schultz, Meredith L. – counsel for Appellant Carnival Corporation

67. Shaffer, Derek L. – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

68. Shanmugam, Kannon K. – counsel for Appellant Carnival Corporation

69. Shultz, Meredith L. – counsel for Appellant Carnival Corporation

70. Singer, Stuart H. – counsel for Appellant Carnival Corporation

71. Sullivan, Kathleen M. – counsel for Appellant Norwegian Cruise Line Holdings, Ltd.

72. Taormina, Benjamin A. – counsel for Appellant Royal Caribbean Cruises, Ltd.

73. Tager, Evan – counsel for U.S. Chamber of Commerce

74. U.S. Chamber of Commerce – *Amicus* supporting Appellants

75. U.S. Travel Association – *Amicus* supporting Appellants

76. United States Tour Operators Association, Inc. – *Amicus* supporting Appellants

77. Venable LLP – counsel for Appellants MSC Cruises

78. Vice, Abigail Frisch – counsel for Appellant Carnival Corporation

79. Wang, Jonas Q. – counsel for Appellants MSC Cruises

Pursuant to Rule 26.1-3(b) of the Rules of the United States Court of Appeals for the Eleventh Circuit, the undersigned states that, to the best of the undersigned's knowledge and information, no publicly traded company or corporation has an interest in the outcome of this appeal.

/s/  Bradley J. Bondi
Bradley J. Bondi
Counsel for *Amici Curiae*

## STATEMENT PURSUANT TO FED. R. APP. P. 29(A)(4)(E)

1.    No party's counsel authored this brief in whole or in part.

2.    No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

3.    No person other than the *Amici Curiae*, their members, or their counsel contributed money that was intended to fund preparing or submitting this brief.

/s/  Bradley J. Bondi
Bradley J. Bondi
Counsel for *Amici Curiae*

i

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ....................................................C1 of 5

STATEMENT PURSUANT TO FED. R. APP. P. 29(A)(4)(E) .................... i

TABLE OF CONTENTS .............................................................. ii

TABLE OF AUTHORITIES ........................................................ iii

IDENTITY OF THE *AMICI CURIAE*, THEIR INTEREST IN THE CASE, AND THE SOURCE OF THEIR AUTHORITY TO FILE ................... 1

STATEMENT OF THE ISSUES .................................................. 3

SUMMARY OF THE ARGUMENT ............................................. 4

ARGUMENT ......................................................................... 6

   I   The District Court's Ruling Creates Uncertainty in the Travel Industry Concerning the Reliability of Federal Guidance ................. 7

  II   The District Court's Decision Has Contributed to the End of Cruises to Cuba, Which Financially Harms The Travel Industry And Undermines The Policy Objectives of the CACR ............................. 14

CONCLUSION ...................................................................... 18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ................................................................ 19

CERTIFICATE OF SERVICE .................................................... 19

CERTIFICATE OF CONFERENCE ............................................. 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469 (D.C. Cir. 2020)....................13

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) ...................................13

*Kent v. Dulles*, 357 U.S. 116 (1958) ......................................................................6

*Mohamed v. Holder*, 266 F. Supp. 3d 868 (E.D. Va. 2017) ....................................7

*Pellegrini v. Landmark Travel Grp.*, 628 N.Y.S.2d 1003 (Ct. Cl. 1995)............8, 18

*United States v. Williams*, 553 U.S. 285 (2008)....................................................13

*Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150
    (D.D.C. 2010)...................................................................................................11

**Statutes and Regulations**

22 U.S.C. § 6023(13)(B)...............................................................................5, 6, 9

31 C.F.R. § 501.601 .............................................................................................12

31 C.F.R. § 501.801(a).....................................................................................10, 11

31 C.F.R. § 515.565(b)..........................................................................6, 11, 14, 17

31 C.F.R. §§ 515.101–515.901 .........................................................................5, 10

Cuban Assets Control Regulations, 84 Fed. Reg. 25992-01 (June 5, 2019) .....14, 15

Cuban Assets Control Regulations, 87 Fed. Reg. 35088-01 (June 9, 2022) ...........15

Restricting the Temporary Sojourn of Aircraft and Vessels to Cuba, 84 Fed.
    Reg. 25986-01 (June 5, 2019).......................................................................14

**Other Authorities**

American Society of Travel Advisors, *2013 Financial Benchmarking* (Oct.
    2014).........................................................................................................8, 16

American Society of Travel Advisors*, Regulatory Compliance Handbook* (6th
    ed. 2020)........................................................................................................8

Chris Gray Faust & Melinda Crow, *Can Americans Travel to Cuba on a Cruise?
    And More Questions Answered*, Cruise Critic (updated Mar. 1, 2023) ...........15

Claudia Unger & Mary Pat Sullivan, Phocuswright, *U.S. Travel Agency
    Distribution Landscape 2016–2021* (Nov. 2018) ........................................9, 17

iii

Dave Sherwood, *No fuel? No problem; Tourists in Cuba brave worsening shortages*, Reuters (Feb. 17, 2023) .................................................................14

Johannes Werner, *Ruling against cruise lines may send chill to other U.S. travel*, Cuba Standard (Mar. 25, 2022) ...........................................................15

Lacey Pfalz, *Travel Advisor Priorities Included in Year-End Government Spending Bill*, TravelPulse (Dec. 20, 2022).......................................................7

Letter from Andrew Sens to Norwegian Cruise Lines Holdings, Ltd., *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 1:19-cv-23591 (S.D. Fla. Sept. 21, 2021)...................................................................................10

Letter from Andrew Sens to Royal Caribbean Cruises, Ltd., *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 1:19-cv-23591 (S.D. Fla. Sept. 21, 2021) .........................................................................................................10

Letter from Davin Blackborow to Carnival Corporation, *Havana Docks Corp. v. Carnival Corp.*, 1:19-cv-21724 (S.D. Fla. Sept. 20, 2021).........................10

Letter from Eben Peck, Executive Vice President of ASTA, to the Hon. Mark Keam, Deputy Assistant Secretary, U.S. Department of Commerce (Mar. 15, 2023)....................................................................................................................17

Letter from Rosie Wells to Bradley Stein, *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, 1:19-cv-23590 (S.D. Fla. Sept. 17, 2021) ...............11

Letter from Zane Kerby, President and CEO of ASTA, to Hon. Rochelle Walensky, Director of CDC (Feb. 9, 2021)......................................................7

Letter from Zane Kerby, President and CEO of ASTA, to Sen. Rick Scott (Jan. 25, 2022).........................................................................................................18

Mark Matousek, *Trump banned US cruise ships from traveling to Cuba, and Carnival is feeling the pain*, Business Insider (June 20, 2019) .......................16

Mary Stein, *The Hosted Travel Agent Longitudinal Report 2020*, Host Agency Reviews (last updated Sept. 8, 2022).................................................................9

*Norwegian Cruise Line Says Cuba Travel Ban to Hit 2019 Earnings*, CNBC (June 7, 2019).....................................................................................................16

U.S. Travel Association, *Economic Impact of the U.S. Travel Industry: 2022 National Data* (updated April 2023)................................................................16

## <u>IDENTITY OF THE *AMICI CURIAE*, THEIR INTEREST IN THE CASE, AND THE SOURCE OF THEIR AUTHORITY TO FILE</u>

*Amici* are organizations and trade associations representing different aspects of the travel industry, including travel advisors (also known as travel agents), and tour operators. These organizations and trade associations generally share a commitment to foster and promote travel, educate the traveling public and members of the travel industry, and encourage a culture of professionalism among their membership. The travel industry as a whole depends on clear guidance from the Executive Branch of the federal government regarding the enforcement of travel-related federal statutes and regulations. The District Court's ruling, if affirmed by this Court, would mean that the *Amici* should not and cannot rely upon actions by the Executive Branch, or the failure to take such actions, to provide fair notice of what travel (and conduct during such travel) violates federal statutes and regulations. As a result, the *Amici*, whose members act as information fiduciaries for the traveling public, would be unable to advise travelers appropriately and lawfully. Additionally, the *Amici* have been impacted financially due to the increased difficulty associated with lawful travel to Cuba—difficulty the District Court's ruling below has only exacerbated. For these reasons, *Amici* have a substantial interest in the outcome of this appeal and support reversal of the District Court's ruling.

1

The *Amici* are:

**U.S. Travel Association ("U.S. Travel")**: a national, non-profit organization representing all components of the travel industry. U.S. Travel advocates for the whole of the travel industry to favorably shape the travel experience. Its stated mission is to increase travel to and within the United States and, in so doing, fuel the nation's economy and future growth. U.S. Travel has more than 1,100 members, comprised primarily of travel service providers, travel destinations, travel associations, and allied members.

**United States Tour Operators Association ("USTOA")**: a professional, voluntary trade association created with the primary purpose of promoting integrity within the tour operator industry. USTOA was founded in 1972 by a small group of California tour operators who recognized the need for a unified voice to protect the traveling public, as well as to represent the interests of tour operators. USTOA's goals are to: (1) educate the travel industry, government agencies, and the public about tours, vacation packages, and tour operators; (2) protect consumers and travel advisors from financial loss in the event of a USTOA member's bankruptcy, insolvency, or cessation of business; (3) foster a high level of professionalism within the tour operator industry; and (4) promote and develop travel on a worldwide basis.

**American Society of Travel Advisors ("ASTA")**: a trade association originally founded in 1931 whose mission is to facilitate the business of selling travel through effective representation, shared knowledge, and the enhancement of professionalism. Its current membership consists of over 7,500 domestic travel agencies, independent travel advisors, and supplier companies varying in size from the smallest home-based businesses to traditional brick-and-mortar storefront agencies to the largest travel management companies and online travel agencies such as Expedia. As of 2019, they collectively accounted for an annual payroll output of $7.1 billion and annual revenues of $17.7 billion. ASTA requires its members to abide by its code of ethics in order to promote professionalism in the travel industry and trust among the general public.

## STATEMENT OF THE ISSUES

1.    Whether the Executive Branch's licensing and encouragement of Appellants' conduct, including its rejection of complaints regarding that conduct, should be considered in determining whether Appellants violated the Helms-Burton Act. Members of the travel industry—particularly travel agencies and individual travel advisors—rely upon the Executive Branch of the federal government to provide clear guidance with respect to travel-related federal statutes and regulations, so that they, as information fiduciaries, can advise the traveling public appropriately and lawfully. The District Court's ruling, however, is based on a factual record

replete with guidance from the Executive Branch, including the Executive Branch's rejection of complaints regarding the cruises in question, suggesting that Appellants' cruise excursions to Cuba were lawful. Affirming the District Court's award of summary judgment would mean that the Executive Branch's licensing, encouragement of travel, and enforcement decisions do not constitute notice, much less fair notice, of what travel (and conduct during such travel) violates federal statutes and regulations.

2.   Whether affirming the District Court's ruling disproportionately harms the travel industry and undermines the federal government's stated policy goal of promoting the Cuban people's independence. Cruises to Cuba have ceased, in large part due to the District Court's ruling in this case, which has increased the uncertainty in members of the travel industry's ability to rely upon guidance from the Executive Branch to advise the traveling public appropriately and lawfully. This cessation has caused substantial financial harm to the travel industry, which employs millions of Americans, and is contrary to the federal government's policy goal of promoting the Cuban people's independence from Cuban authorities.

## SUMMARY OF THE ARGUMENT

The travel industry depends on clear guidance from—and unequivocally should be able to rely on—the federal government's rules and regulations concerning the enforcement of travel restrictions. This dependence is particularly true when it comes

4

to Cuba—a popular Caribbean travel destination subject to uniquely restrictive travel policies. By proxy, travel advisors and tour operators depend on cruise lines receiving clear guidance from the federal government because the sale of cruises is a major part of their collective livelihoods. The litigation which is the subject of this Appeal is, in many ways, the product of the Executive Branch's licensing and encouragement of Appellants' cruises to Cuba under the "lawful travel" exception to the Helms-Burton Act, 22 U.S.C. § 6023(13)(B), and the Cuban Asset Control Regulations ("CACR"), 31 C.F.R. §§ 515.101–515.901. The Executive Branch signaled to both the Appellant cruise lines and to Havana Docks Corporation that Appellants' cruises to Cuba were lawful. This Court's affirmance of the District Court's ruling would mean that the travel industry cannot rely upon the Executive Branch's actions, or inaction, to guide the industry's compliance with travel-related federal statutes and regulations—which in turn raises significant issues of due process and fair notice.

In addition, the uncertainty created by the District Court's decision in this case (among other things) has ended cruises to Cuba. The cessation of cruises to Cuba, in turn, has caused financial harm to the United States' travel industry, which is dominated by small businesses, and thwarts the stated policy objective of the CACR to promote the Cuban people's independence from Cuban authorities. The American people are the best ambassadors of our country's values abroad, and hindering

them—and, in fact, *preventing* them—from travelling to Cuba does not facilitate the exchange of democratic ideals which the federal government seeks to foster between Americans and Cubans.

## ARGUMENT

Freedom to travel is a fundamental right of national citizenship and is embedded in multiple provisions of the Constitution of the United States, including the Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment. *See Kent v. Dulles*, 357 U.S. 116, 125–26 (1958). In recognition of this longstanding right, the Helms-Burton Act exempts from its anti-trafficking restrictions any "transaction or uses of property incident to lawful travel to Cuba." 22 U.S.C. § 6023(13)(B). One such method of "lawful travel" is the general license provision under 31 C.F.R. § 515.565(b), which allows "people-to-people travel" that facilitated educational exchange activities.

The travel industry appropriately relied on Executive Branch guidance to determine the full scope of this license as it pertains to the Helms-Burton Act's lawful travel exception. The District Court's summary judgment in favor of Havana Docks Corporation has created uncertainty and has impinged upon the fundamental right to travel. Where travel agents and advisors once relied on the Executive Branch to help navigate complex framework travel regulations such as the Cuban Asset Control Regulations ("CACR"), the District Court's decision has delegitimized the

Executive Branch as a source of guidance. The District Court's ruling has chilled lawful cruise travel to Cuba as a result of the ruling's uncertainty and has caused financial harm to an industry still reeling from the impact of the COVID 19 pandemic. For these reasons, Amici support reversal of the District Court's ruling.

## I    The District Court's Ruling Creates Uncertainty in the Travel Industry Concerning the Reliability of Federal Guidance.

The travel industry is uniquely reliant on numerous executive agencies for clear guidance concerning the "enforcement of various travel-related policies" to ensure that "travel advisors, suppliers, and consumers can make informed decisions." Letter from Zane Kerby, President and CEO of ASTA, to Hon. Rochelle Walensky, Director of CDC (Feb. 9, 2021), https://www.asta.org/docs/default-source/testimony-filings/2021/asta-to-cdc-director-walensky-re-standards-for-resuming-travel-2.9.2021-final.pdf. The ability to rely on such guidance is critical for travel advisors and agents in the United States, a country which "has a long history of judicially sanctioned restrictions on citizens' international travel in the interests of foreign affairs and national security," and, until recently, was "the only G20 country without a federal agency or cabinet-level official in charge of tourism policy." *Mohamed v. Holde*r, 266 F. Supp. 3d 868, 878 (E.D. Va. 2017); Lacey Pfalz, *Travel Advisor Priorities Included in Year-End Government Spending Bill*, TravelPulse (Dec. 20, 2022), https://www.travelpulse.com/News/Impacting-Travel/Travel-Advisor-Priorities-Included-in-Year-End-Government-Spending-Bill.

Travel advisors' and tour operators' reliance on the Executive Branch is most apparent—and clear guidance most sorely needed—when dealing with travel to Cuba, a country which is subject to a complex and restrictive travel policy by the United States. Staying informed about the United States' restrictions on travel to Cuba is challenging because government policy can change (and has changed) sharply with political headwinds. *See* American Society of Travel Advisors*, Regulatory Compliance Handbook* 32 (6th ed. 2020) ("The regulations governing travel to Cuba are extensive, and are subject to frequent change, especially when control of the U.S. administration shifts from one political party to another."). But travel advisors and tour operators—as fiduciaries to their clients—must make every effort to stay on top of the latest developments so that accurate and reliable information can be disseminated. *See generally Pellegrini v. Landmark Travel Grp.*, 628 N.Y.S.2d 1003, 1005 (Ct. Cl. 1995) (describing the travel agent as an "information specialist" who is "relied upon much like other information specialists and professionals such as attorneys, doctors, and accountants").

By proxy, travel advisors and tour operators also depend on cruise lines receiving clear regulatory guidance from the Executive Branch. Travel agencies and tour operators rely heavily on the sale of cruises for their income. The commission rates earned by travel advisors on booking cruises tend to be higher than for other forms of travel. *See* American Society of Travel Advisors, *2013 Financial*

*Benchmarking* 36 (Oct. 2014) [hereinafter *Financial Benchmarking*] (demonstrating that the average commission earned on cruise bookings is 15 percent, while air travel is 7–8 percent, car rental is 6 percent, and rail is 5 percent). Moreover, cruises regularly are a top-selling product for travel advisors, travel agents, and tour operators. Mary Stein, *The Hosted Travel Agent Longitudinal Report 2020*, Host Agency Reviews (last updated Sept. 8, 2022) ("[C]ruises were the top-selling product each year [from 2016 to 2019]."), https://hostagencyreviews.com/blog/host-travel-agent-longitudinal-report-2020. Leisure-focused travel advisors (as opposed to corporate-focused travel advisors) often specialize in selling ocean cruises and are especially dependent on such sales for their incomes. *See* Claudia Unger & Mary Pat Sullivan, Phocuswright, *U.S. Travel Agency Distribution Landscape 2016–2021* 10–14 (Nov. 2018) (observing that sea and river cruises account for the "biggest share" of tour packages sold by non-corporate travel agents, and that the most popular specialization among travel agents was ocean cruises). As such, any lack of clarity in Executive Branch guidance to cruise lines or other travel industry enterprises has a significant downstream effect on travel agencies (and, by extension, individual travel advisors) and tour operators.

The record that the District Court relied on shows that the Executive Branch licensed and encouraged Appellants to continue their cruise excursions to Cuba under the "lawful travel" exception of the Helms-Burton Act, 22 U.S.C.

§ 6023(13)(B), and the licensing provisions of the CACR, 31 C.F.R. §§ 515.101–515.901. The District Court, however, reasoned that "lawful travel" does not necessarily mean "travel licensed and encouraged by the Executive Branch," and Appellants therefore were not "immunize[d]" by the Executive Branch's encouragement. *See* Omnibus Order, *Havana Docks Corp v. Norwegian Cruise Line Holdings, Ltd.*, No. 1:19-cv-23591-BB (S.D. Fla. March 21, 2022) [ECF 367 at 117–18]. This ruling, if upheld, will cause serious harm to the travel industry's ability to plan excursions for their guests and customers and to advise travelers appropriately and lawfully.

For example, OFAC informed Carnival, NCL, and RCL in 2015 that it would not be granting any further specific licenses for people-to-people travel because the Cuban Asset Control Regulations authorized such travel under a general license based on OFAC's January 2015 amendments.[1] *See* 31 C.F.R. § 501.801(a) ("It is the

---

[1] *See* Letter from Davin Blackborow to Carnival Corporation, *Havana Docks Corp. v. Carnival Corp.*, 1:19-cv-21724 (S.D. Fla. Sept. 20, 2021) [ECF 326-35]; Letter from Andrew Sens to Norwegian Cruise Lines Holdings, Ltd., *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 1:19-cv-23591 (S.D. Fla. Sept. 21, 2021) [ECF 235-20]; Letter from Andrew Sens to Royal Caribbean Cruises, Ltd.,

policy of OFAC not to grant applications for specific licenses authorizing transactions to which the provisions of a general license are applicable."). Unlike the general license for people-to-people travel in 31 C.F.R. § 515.565(b), the application process for a specific license under 31 C.F.R. § 501.801(a) provides a more particularized review process for the applicant's proposed transaction "based on national security and foreign policy considerations." *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 153 (D.D.C. 2010). By steering cruise lines away from specific licenses, OFAC necessarily implied that Appellants' conduct was not in need of particularized review and was covered by the general license then authorized by the CACR.

The Executive Branch's guidance-by-enforcement (or lack thereof) also signaled that Appellants' travel to Cuba was lawful. On June 4, 2019, OFAC completed its review of RCL's response to an Administrative Subpoena and issued RCL a "Cautionary Letter." *See* Letter from Rosie Wells to Bradley Stein, *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd*., 1:19-cv-23590 (S.D. Fla. Sept. 17, 2021) [ECF 122-23, 3–6]. The Cautionary Letter identified only alleged recordkeeping issues—a sampling of passenger certification revealed "that

---

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 1:19-cv-23591 (S.D. Fla. Sept. 21, 2021) [ECF 235-18].

approximately 12 paper certifications failed to either select a general travel license or provide a specific license number." *Id.* at 5; *see also* 31 C.F.R. § 501.601 ("Except as otherwise provided, every person engaging in any transaction subject to the provisions of this chapter shall keep a full and accurate record of each such transaction engaged in. . . ."). But OFAC did not identify any fundamental problems with the nature of RCL's travel to Cuba, did not find a CACR violation, and declined to impose any civil monetary penalties. OFAC's silence with respect to any legal requirement other than recordkeeping gave RCL every reason to believe that, but for its recordkeeping practices, every other aspect of its excursions to Cuba complied with the law.

The Executive Branch's guidance to Havana Docks Corporation further signaled that Appellants' conduct was lawful. The record below reflects that Mickael Behn, President of Havana Docks, attempted to contact OFAC by email in 2018 (as part of a joint effort with other claimants to property expropriated by the Cuban government) to spur enforcement efforts against cruise lines. *See* Exhibit 34, Deposition Transcript of Mickael Behn, *Havana Docks Corp. v. MSC Cruises SA*, No. 1:19-cv-23588 (S.D. Fla. Apr. 22, 2022) [ECF 357-17, 126–28]. OFAC acknowledged receipt of Mr. Behn's complaint but did not take enforcement action against the cruise lines, and his efforts ultimately were unsuccessful. The State Department likewise refused Mr. Behn's invitation for regulatory action (again

acting as a member of a joint effort with other claimants), informing him that it was "not currently pursuing . . . actions in relation to commercial cruise lines" given "the clear exclusion in [the] definition of 'traffics' of transactions and uses of property incident to lawful travel to Cuba." *See* Ex. 84, Omnibus Statement of Undisputed Material Facts, *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 1:19-cv-23591 (S.D. Fla. Sept. 21, 2021) [ECF 237-24].

The District Court's ruling, if upheld, would mean that Appellants—and, in turn, *Amici*—cannot rely on clear and unambiguous guidance from the Executive Branch to advise the travelling public. The inability of stakeholders in the travel industry to count on Executive Branch guidance, in turn, raises serious due process concerns. "Rule of law principles require that parties have fair notice and an opportunity to conform their behavior to legal rules." *Circus Circus Casinos, Inc. v. NLRB*, 961 F.3d 469, 476 (D.C. Cir. 2020). "This requirement of clarity . . . is essential to the protections provided by the Due Process Clause of the Fifth Amendment." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (citing *United States v. Williams*, 553 U.S. 285, 304 (2008)). Affirming the District Court's judgment would mean that the travel industry cannot rely on future guidance from the Executive Branch for fair notice of what conduct violates travel regulations—whether to Cuba or any other destination country subject to travel restrictions. This Court should consider carefully the implications of such a ruling on the travel advisor, travel

agency, and tour operator industries and, indeed, any other industry that relies on clear and consistent guidance from the Executive Branch in order to provide information services to the American public.

## II  The District Court's Decision Has Contributed to the End of Cruises to Cuba, Which Financially Harms the Travel Industry and Undermines the Policy Objectives of the CACR.

The uncertainty created by the District Court's ruling has contributed to the demise of cruises to Cuba. This cessation of cruises to Cuba has impacted the travel industry financially and hampered the worthy policy goals of "enhanc[ing] contact with the Cuban people, support[ing] civil society in Cuba, [and] promot[ing] the Cuban people's independence from Cuban authorities." 31 C.F.R. § 515.565(b)(2).

In 2022, Cuba received 1.6 million foreign visitors—a mere 38 percent of the visitors in 2019. *See* Dave Sherwood, *No fuel? No problem; Tourists in Cuba brave worsening shortages*, Reuters (Feb. 17, 2023), https://www.reuters.com/world/ americas/no-fuel-no-problem-tourists-cuba-brave-worsening-shortages-2023-02-17. The COVID-19 pandemic undoubtedly played a lingering role in the 2022 decline of the number of visitors to Cuba, but American travel restrictions and the sudden enforceability of the Helms-Burton Act, of which *this litigation* is the most prominent example, undoubtedly suppressed visitor numbers. Since 2019, "passenger and recreational vessels" generally have been prohibited from sailing to Cuba. *See* Restricting the Temporary Sojourn of Aircraft and Vessels to Cuba, 84

14

Fed. Reg. 25986-01 (June 5, 2019).[2] Thus, even as other forms of travel to Cuba have become available, travel by cruise ships has not. *See* Chris Gray Faust & Melinda Crow, *Can Americans Travel to Cuba on a Cruise? And More Questions Answered*, Cruise Critic (updated Mar. 1, 2023) ("It is now possible to fly to far more destinations within the country. There has been no change in restrictions on cruise passengers, however."), https://www.cruisecritic.com/articles/can-americans-travel-to-cuba-on-a-cruise-and-more-questions-answered.

The present litigation compounds the problem—even if the restrictions on vessels sailing to Cuba were lifted (which they may be given the shifting political environment), the specter of litigation under the Helms-Burton Act still would imperil any American company seeking to facilitate cruise travel to Cuba, as commentators have observed. *See id.* ("It remains to be seen whether [the District Court's] ruling will withstand the anticipated appeals and how it might impact the future of cruising to Cuba by American-owned companies."); *see also* Johannes

---

[2] On June 5, 2019, the Trump administration rescinded the general license for people-to-people travel. *See* Cuban Assets Control Regulations, 84 Fed. Reg. 25992-01 (June 5, 2019). On June 9, 2022, the Biden administration reinstated the general license but has not lifted the restrictions on vessels. *See* Cuban Assets Control Regulations, 87 Fed. Reg. 35088-01 (June 9, 2022).

Werner, *Ruling against cruise lines may send chill to other U.S. travel*, Cuba Standard (Mar. 25, 2022) ("[T]he [District Court's] opinion is now sending a chilling signal to other U.S. companies engaged in travel to Cuba.").

The chill on cruises to Cuba, exacerbated by the District Court's ruling in this case, also has negatively impacted the finances of the cruise lines and, by extension, the commission income of the travel advisors who rely on cruise bookings. Both NCL and RCL reported a decline in their earnings per share in 2019. *Norwegian Cruise Line Says Cuba Travel Ban to Hit 2019 Earnings*, CNBC (June 7, 2019), https://www.cnbc.com/2019/06/07/norwegian-cruise-line-says-cuba-travel-ban-to-hit-2019-earnings.html. Carnival Corporation reported a similar decline. *See* Mark Matousek, *Trump banned US cruise ships from traveling to Cuba, and Carnival is feeling the pain*, Business Insider (June 20, 2019), https://www.businessinsider.com/carnival-hurt-by-trump-administration-cuba-travel-ban-2019-6. Any downturn in cruises necessarily causes great harm to the economic health of travel agencies, whose income is largely commission-based and particularly relies on cruise bookings due to their favorable commission structure. *Financial Benchmarking*, *supra*, at 34 ("Leisure [a]gencies [r]emain [h]ighly [d]ependent on [c]ommissions.").

Moreover, the harm is neither *de minimis* nor limited to large corporations such as the Appellants. In 2022, the travel industry supported "nearly 15 million American jobs" and directly employed 8 million people. U.S. Travel Association,

16

*Economic Impact of the U.S. Travel Industry: 2022 National Data* (updated April 2023), https://www.ustravel.org/sites/default/files/2023-04/economic-impact-answer-sheet.pdf. In the travel advisory sector alone, "there are close to 15,000 retail travel agency locations in the U.S. employing over 102,000 people, plus an additional 60,000 self-employed advisors." Letter from Eben Peck, Executive Vice President of ASTA, to the Hon. Mark Keam, Deputy Assistant Secretary, U.S. Department of Commerce (Mar. 15, 2023), https://www.asta.org/docs/default-source/testimony-filings/2023/asta-to-commerce-das-keam-re-covid-19-impacts-march-2023.pdf. "The vast majority of these businesses (98 percent) are small according to the U.S. Small Business Administration's (SBA) size standards, and over two-thirds of them are owned and operated by women." *Id.*; *see also* Unger & Sullivan, *supra*, at 11 ("Today's average travel agent is female 55 years old (or older) and works from home."). The Court should be mindful of the harm that affirming the District Court's ruling could cause to an industry sustained by small, women-owned businesses.

Given the Biden administration's reinstatement of the general license in section 515.565, affirming the District Court's rulings would also harm the CACR's stated goals of "enhanc[ing] contact with the Cuban people, support[ing] civil society in Cuba, [and] promot[ing] the Cuban people's independence from Cuban authorities." 31 C.F.R. § 515.565(b)(2). "[T]he American people are the best ambassadors of U.S.

17

values abroad, and should be allowed to freely promulgate those values through travel to any destination they wish without restriction from their own government." Letter from Zane Kerby, President and CEO of ASTA, to Sen. Rick Scott (Jan. 25, 2022), https://www.asta.org/docs/default-source/testimony-filings/2022/asta-to-sen scott-re-cuba-travel-january-2022-final.pdf?sfvrsn=c2bd3cb8_3. The continued uncertainty surrounding travel to Cuba represents a substantial obstacle to the free exchange of ideas between the American and Cuban people. As information fiduciaries for the traveling public, travel advisors play a vitally important role in facilitating that exchange. *Pellegrini*, 628 N.Y.S.2d at 1005.

## <u>CONCLUSION</u>

The District Court's ruling is especially harmful to members of the travel industry represented by *Amici*. Affirming the District Court's ruling would raise due process and fair notice concerns, cause financial harm to the travel agency and tour operator industries, and hamper the policy objectives of the CACR. *Amici* respectfully submit that the District Court's ruling should be reversed.

<u>/s/  Bradley J. Bondi</u>
Bradley J. Bondi
Vitaliy Kats
Counsel for *Amici Curiae*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains **3920** words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point typeface.

> /s/  Bradley J. Bondi
> Bradley J. Bondi
> Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I certify that on July 7, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

> /s/  Bradley J. Bondi
> Bradley J. Bondi
> Counsel for *Amici Curiae*

19

## <u>CERTIFICATE OF CONFERENCE</u>

I certify that on July 3 2023, I conferred with counsel for Appellant Havana Docks Corporation, who confirmed that Appellant does not oppose the filing of this amicus brief.

/s/  Bradley J. Bondi
Bradley J. Bondi
Counsel for *Amici Curiae*
